**2020-1189**

# United States Court of Appeals for the Federal Circuit

INFINITY COMPUTER PRODUCTS, INC.,

*Plaintiff-Appellant*,

v.

OKI DATA AMERICAS, INC.,

*Defendant-Appellee.*

*Appeals from the United States District Court for the District of Delaware Case No. 1:18-cv-00463-LPS, Judge Leonard P. Stark*

## REPLY BRIEF FOR PLAINTIFF-APPELLANT

ANDREW G. DINOVO
NICOLE E. GLAUSER
DINOVO PRICE LLP
7000 N. MoPac Expressway, Suite 350
Austin, Texas 78731
Telephone: (512) 539-2626
Facsimile: (512) 539-2627

*Counsel for Plaintiff-Appellant Infinity Computer Products, Inc.*

AUGUST 10, 2020

COUNSEL PRESS, LLC (888) 277-3259

## CERTIFICATE OF INTEREST

Counsel for Appellant, Infinity Computer Products, Inc., certifies the following:

1. Provide the full names of all entities represented by undersigned counsel in this case: Infinity Computer Products, Inc.

2. Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. N/A

3. Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities: N/A

4. The names of all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities (excluding those who have already entered an appearance in this court) are: Christopher V. Goodpastor, Adam G. Price, Gabriel R. Gervey and Daniel L. Schmid from the law offices of DiNovo Price LLP; William J. Rhodunda, Jr. and Chandra J. Williams from the law offices of Rhodunda Williams & Kondraschow.

5. The case titles and numbers of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal are:

| **Case Name** | **Case No.** | **Court** |
|---|---|---|
| *Infinity Computer Products, Inc. v. Canon USA, Inc.* | 2:18-cv-01823 | EDNY |
| *Infinity Computer Products, Inc. v. Dell, Inc.* | 2:12-cv-06808 | EDPA |

| | | |
|---|---|---|
| *Infinity Computer Products, Inc. v. Hewlett-Packard Company* | 2:12-cv-06805 | EDPA |
| *Infinity Computer Products, Inc. v. Konica Minolta Business Solutions, USA, Inc.* | 2:12-cv-06802 | EDPA |
| *Infinity Computer Products, Inc. v. Lexmark International, Inc.* | 5:18-cv-00198 | EDKY |
| *Infinity Computer Products, Inc. v. Ricoh USA, Inc.* | 2:12-cv-06807 | EDPA |
| *Infinity Computer Products, Inc. v. Samsung Electronics America, Inc.* | 2:12-cv-06798 | EDPA |
| *Infinity Computer Products, Inc. v. Toshiba America Business Solutions, Inc.* | 2:12-cv-06807 | EDPA |
| *Infinity Computer Products, Inc. v. Xerox Corporation* | 2:12-cv-06804 | EDPA |

6. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). N/A

# TABLE OF CONTENTS

***Page***

CERTIFICATE OF INTEREST ........ i

TABLE OF AUTHORITIES ........ v

TABLE OF ABBREVIATIONS ........ vii

INTRODUCTION ........ 1

REPLY ........ 3

I. THE DISTRICT COURT ERRED APPLYING A MIS-INTERPRETATION OF THE DATA FLOW PASSAGE AUTHORED BY OKI DATA'S LITIGATION ATTORNEYS ........ 3

A. Oki Data Has Not Identified a Single Instance in the Prosecution History in Which Infinity Stated that the Passive Link Extended to the I/O Bus ........ 3

B. Oki Data's Diagrams Have Changed, Both Versions Are Incorrect, and Neither Justifies the Lower Court's Error ........ 7

II. NEITHER THE DISTRICT COURT NOR OKI DATA CONDUCTED THE NECESSARY ANALYSIS UNDER *NAUTILUS* ........ 13

A. The Intrinsic Record Supports Definiteness ........ 13

B. Reference to Actual Claim Language, Required Under *Nautilus*, Mandates Reversal of the District Court ........ 14

C. The Data Flow Passage Cannot in Isolation Render the Terms "Computer" and "Passive Link" Indefinite ........ 16

III. OKI DATA'S LATEST ATTEMPT TO JUSTIFY ITS MISINTERPRETATION ARE UNAVAILING ........ 17

A. Oki Data's Obviousness-type Argumentation Combining Perkins and Kenmochi is Inapposite ........ 17

B. Oki Data's Attempt to Justify Its Misinterpretation that Perkins Is Otherwise Invalidating Was Not Decided or Considered by the District Court and Is Incorrect ........ 19

IV. *TEVA* DOES NOT SUPPORT INDEFINITENESS OF THE ASSERTED CLAIMS IN LIGHT OF THE CLAIM LANGUAGE, SPECIFICATION, AND EXPERT TESTIMONY .................................... 23

V. INFINITY DID NOT DISAVOW CLAIM SCOPE DURING PROSECUTION ........................................................................... 27

CONCLUSION ........................................................................................ 28

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS ......................................................................... 30

# TABLE OF AUTHORITIES

***Page(s)***

**Cases**

*Apple Inc. v. Samsung Elecs. Co.*,
786 F.3d 983 (Fed. Cir. 2015)....26

*Apple Inc. v. Samsung Elecs. Co.*,
137 S. Ct. 429 (2016)....26

*Continental Circuits LLC v. Intel Corporation*,
915 F.3d 788 (Fed. Cir. 2019)....28

*Dow Chem. Co. v. Nova Chemicals Corp. (Canada)*,
803 F.3d 620 (Fed. Cir. 2015)....24

*Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*,
845 F.3d 1357 (Fed. Cir. 2017)....26

*i4i Ltd. Partnership v. Microsoft Corp.*,
598 F.3d 831 (Fed. Cir. 2010).... 6, 16

*In re Walter*,
698 F. App'x 1022 (Fed. Cir. 2017)....25

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
572 U.S. 898 (2014).... 13, 14

*Openwave Sys., Inc. v. Apple Inc.*,
808 F.3d 509 (Fed. Cir. 2015)....27

*Phillips v. AWK Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)....21

*Poly-America, L.P. v. API Industries, Inc.*,
839 F.3d 1131 (Fed. Cir. 2016)....27

*Schwing GmbH v. Putzmeister Aktiengesellschaft*,
305 F.3d 1318 (Fed. Cir. 2002)....27

*SkinMedica, Inc. v. Histogen Inc.*,
727 F.3d 1187 (Fed. Cir. 2013)....25

*Springs Window Fashions LP v. Novo Indus., L.P.*,
323 F.3d 989 (Fed. Cir. 2003) .......... 24

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
789 F.3d 1335 (Fed. Cir. 2015) .......... 12

*Thorner v. Sony Computer Entertainment America LLC*,
669 F.3d 1362 (2012) .......... 16

*Tinnus Enters., LLC v. Telebrands Corp.*,
733 F. App'x 1011 (Fed. Cir. 2018) .......... 26

*Verdegaal Bros. v. Union Oil Co. of California*,
814 F.2d 628 (Fed. Cir. 1987) .......... 19

**Statutes**

35 U.S.C. § 112 .......... 13

35 U.S.C. § 282 .......... 15

# TABLE OF ABBREVIATIONS

| | |
|---|---|
| **Parties** | |
| Infinity | Plaintiff-Appellant Infinity Computer Products, Inc. |
| Oki Data | Defendant-Appellee Oki Data Americas, Inc. |
| **Defined Terms** | |
| ’811 Patent | U.S. Patent No. 6,894,811 |
| ’423 Patent | U.S. Patent No. 7,489,423 |
| ’574 Patent | U.S. Patent No. 8,040,574 |
| ’915 Patent | U.S. Patent No. 8,294,915 |
| Infinity Patents | Collectively, the ’811 Patent, ’423 Patent, ’574 Patent, and ’915 Patent |
| Asserted Claims | Claims 1, 2, 4, 6, 7, 18, 19, 20 of the ’811 Patent; claims 1, 2, 3, 4, 6 of the ’423 Patent; claims 1, 2, 4, 5, 7, 8 of the ’574 Patent; and claims 1, 6, 7, 8, 9, 14, 15 of the ’915 Patent |
| Perkins Reference or Perkins | U.S. Patent No. 5,452,106 to Perkins |
| court *or* district court | United States District Court for the District of Delaware, Honorable Leonard P. Stark presiding |
| PTO | United States Patent and Trademark Office |
| PTAB | Patent Trial and Appeal Board of the United States Patent and Trademark Office |
| CBMR | Covered Business Method Review |
| BlueBr. | Appellant’s Opening Brief |
| RedBr. | Appellee’s Response Brief |

## INTRODUCTION

It is the claims, not an isolated passage from the prosecution history devoid of context, that must be definite. It is telling that Oki Data does not address the language of any of the Asserted Claims. Nor has it enlisted an expert's help to do so.[1] In short, Oki Data has ignored key components of the analysis required under *Nautilus*, and which this Court reviews *de novo*, and instead relies exclusively on a false dichotomy of its own creation.

With selective quotations and interspersed attorney language, Oki Data has manufactured a false, after-the fact conflict predicated on an alleged inconsistency regarding the endpoints of the claimed passive link. A review of the actual language of the Asserted Claims and the prosecution history demonstrates there was never an inconsistency. "Computer" takes its plain and ordinary meaning, and "passive link" was explicitly defined. That definition was applied by the PTAB in 10 reexamination proceedings confirming the validity of the Patents-in-Suit.

Throughout the prosecution history, Infinity stated that the claimed passive link must be between the facsimile machine and the computer. The beginning of the computer is always described as the "interface" (when a card is put into the

---

[1] Oki Data includes claim 1 of the '811 Patent on the first page of its brief, presumably for reference, but does not subsequently refer to it or any other asserted claim in the context of its argument.

computer) or “port.” **<u>Oki Data has failed to direct this Court’s attention to anywhere in the prosecution history that Infinity ever said otherwise</u>**.

Every expert in this case, including Dr. Levitt (Infinity’s expert) and Dr. Melen (the expert of Oki Data’s former codefendant, Epson), testified consistently with Infinity’s position and contrary to Oki Data’s position. All other parties (and their technical experts)—other than Oki Data—accepted the definiteness of the claims, including the terms “computer” and “passive link,” the latter having been explicitly defined during prosecution and accepted by the PTAB, including in connection with discussing Perkins.

With its diagrams, Oki Data has manufactured two shifting and false representations of Infinity’s statement (one before the district court and now a different one before this Court), preferring to focus on its own fabricated diagrams rather than the claim language or Infinity’s actual words during prosecution. For the reasons set forth below, Oki Data’s litigation-generated misunderstanding and subsequent efforts to justify the misunderstanding in the face of the intrinsic evidence should be rejected. And the district court should be reversed.

# **REPLY**

## I. THE DISTRICT COURT ERRED APPLYING A MIS-INTERPRETATION OF THE DATA FLOW PASSAGE AUTHORED BY OKI DATA'S LITIGATION ATTORNEYS

### A. Oki Data Has Not Identified a Single Instance in the Prosecution History in Which Infinity Stated that the Passive Link Extended to the I/O Bus

In its Opening Brief, Infinity made a direct and unequivocal statement: **Infinity never once told the PTO or PTAB that a passive link necessarily extended inside a computer to the I/O port**. BlueBr. at 18; 56. Oki Data has not and cannot show otherwise, and this Court should reject Oki Data's arguments and the district court's decision because they are both predicated on this false proposition.

A passive link is a simple thing; in a wired situation, it is a cable. Infinity never said a cable extends from the facsimile machine to the I/O bus of a computer; that would require a novel architecture that is the opposite of the comparatively simple elegance of Infinity's invention, which enables a passive link or cable between the facsimile machine and the computer. ***Indeed, one wonders how a cable could plausibly be attached between a facsimile machine and an I/O bus***, and there is absolutely nothing in the intrinsic record to support this anomalous and linguistically bogus reading of the passage.

The predicate on which Oki Data and the district court rely—the data flow passage—is set forth again below:

> [W]hen the applicant transfers digital data from the facsimile transceiver through a passive link for scanning to the computer, ***the non-intercepted data*** enters through the RS 232 type connector ***port of the computer*** and passes directly to the I/O bus and is processed by the receiving circuits (i.e. UART, CPU), of the computer, providing a true non-intercepted digital signal between the facsimile transceiver and the computer.

Appx2201 (emphasis added).

The distinction between the link and the data flow is further emphasized and corroborated by the amendment to claim 27, which clarified that Perkins was inapposite prior art because Perkins required circuit 3 to be in-line between the facsimile machine and the computer or on a card plugged into the computer interface. Appx2206-2211. By identifying the "computer interface" in claim 27 as the terminus of the passive link, the patentee was clear that the passive link did not include active circuitry interposed between two cables or where there was a special peripheral card required before the computer interface; both embodiments were more complex and require special electronics relative to the elegant, passive-link-between approach of the claimed invention.

Demonstrating that it consistently took this position, Infinity's Opening Brief indexed its discussions with the PTO, in which it consistently over the course of many years told the PTO that the claimed passive link is between the facsimile machine and the computer. *See* BlueBr. at 40-44. Oki Data attacked only one

example, and a review of the language Oki Data cites confirms Oki Data's fundamental conflation of data flow and the passive link (which is not data):[2]

> The chart instead shows the Applicant consistently described the path of the passive link as extending "through" the ports on the outside of the box containing the computer and "to" the I/O bus of the computer. (*See, e.g.*, **Appx2159-2160** ("***the data*** enters ***through the*** RS 232 type ***connector port of the computer*** and ***passes directly to the I/O Bus***" (emphasis added)); **Appx2201** (same); **Appx2223-2226** (same)).

RedBr. at 50. So here again, Oki Data simply ignores that the "data enters" the "port of the computer." The computer begins at the port, and the discussion of data within the computer has no relevance to the endpoints of the passive link. The language Oki Data cherry picks is nonetheless explicit that the computer starts at the port, as Infinity has consistently contended throughout the prosecution and today. Oki Data's entire position is thus predicated on the attorney-authored fiction that data flow and the passive link are coextensive. Here again, the analogy of a bridge and traffic on it are apt; the traffic continues past the endpoints of the bridge.

Instead of changing the endpoints of the claimed passive link, Infinity suggested a benefit to the digital nature of the claimed system. Namely, the digital data flow, which requires less processing along the transmission path. Permissive benefits do not limit claims unless meeting the rigorous requirements of a disclaimer.

[2] BlueBr. at 27-28.

For example, in *i4i*, this Court evaluated whether permissive benefits or advantages of separate storage of document content and architecture become claim limitations:

> Read as a whole, however, these statements are best understood as describing the advantages of separate storage, the real claim limitation. *See Abbott Labs*., 566 F.3d at 1289–90. The specification's permissive language, "could be edited," "can be created," and "ability to work," does not clearly disclaim systems lacking these benefits.
>
> An examination of the prosecution history similarly reveals no statements that unequivocally narrow the claims to require independent manipulation. Initially, the examiner rejected several claims as obvious, explaining that "[s]torage is always distinct, even if at distinct addresses."
>
> ***
>
> The reason for the examiner's rejection helps us understand i4i's response. In context, i4i's response is best read as clarifying why the invention's "storage means" are more than just "distinct addresses." i4i's subsequent discussion of the benefits of separate storage is not sufficiently "clear and unmistakable" to disavow embodiments lacking independent manipulation. *Purdue Pharma*, 438 F.3d at 1136.
>
> In light of the specification's permissive language, the prosecution history, and the claim language, we conclude that "independent manipulation" is a benefit of separate storage, but not itself a limitation.

*i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831, 844 (Fed. Cir. 2010).

Similarly here, discussion of a permissive advantage—that the claimed digital data transmission allows digital domain data flow all the way to the I/O bus and beyond, to the CPU—does not render the claimed endpoints of the passive link indefinite. The passive link has already been established by the time of system operation. And Oki Data's failure to address or even manifest an understanding of

the difference between the passive link and the data flow through it during operation ruptures the foundation of each of its arguments.

## B. Oki Data's Diagrams Have Changed, Both Versions Are Incorrect, and Neither Justifies the Lower Court's Error

### 1. *The Oki-Data Diagram at RedBr. at 2 Is Incorrect Because it Ignores the Computer Interface or Port*

In its Brief, Oki Data presents a non-evidentiary diagram that it contends represents Infinity's position during prosecution at the PTAB about a passive link.

| | |
|---|---|
| **During Prosecution** | ***NOT a Passive Link***<br>Because of Intervening Apparatus |




RedBr. at 2.

Missing from Oki Data's diagram is where the claimed "passive link" starts (facsimile machine) and ends (computer interface). This diagram is thus fundamentally flawed and fails to account for both the claim language ("computer interface") and prosecution language from the data flow passage ("port of the computer").

Claim 27 from the prosecution history, to which the data flow passage was directed, read as follows:

Claim 27. (Amendment 3) - A method of creating a scanning capability from a facsimile machine to a computer; with scanned image digital data signals transferred through a passive link, without interception from the facsimile machine to the computer, comprising the steps of:

by - passing or isolating the facsimile machine and the computer from the public network telephone line and;

coupling the facsimile machine to the computer;

conditioning the computer to receive digital facsimile signals representing data on a scanned document;

conditioning the facsimile machine to transmit digital signals representing data on a scanned document to the computer, said computer being equipped with send / receive driver communications software enabling the reception of scanned image signals from the facsimile machine, said transmitted digital facsimile signals being received directly into the computer interface through the passive link, thereafter, said computer processing the received digital facsimile signals of the scanned document as needed.

Appx2188-2191.[3] Per claim 27, which again never issued and of course is not asserted, digital facsimile signals are received directly into the "computer interface." Only "***thereafter***," after received at the computer through the passive link, the computer processes the signals. There is no question that the computer begins at the

[3] Claim 27 appears split by a fax cover sheet in the prosecution history.

"computer interface," and the claimed passive link does ***not*** extend into the computer past the interface.

Oki Data's diagram is mostly correct. It can be fixed relatively simply, by identifying the claimed computer interface. The correction, however, is dispositive against its position.




Claim 27 stated that the passive link was between the facsimile machine and the "computer interface." Appx2191. In view of the Perkins peripheral card embodiment, Infinity used the "interface" of the computer language to be clear that the beginning of the "computer" was not defined by the plastic case, but instead at a port or interface, where the data enters the computer for processing "thereafter." Appx2191.




Another corrected depiction is shown above. Once corrected, the flaw in Oki Data's diagram becomes clear. There is no passive link in Perkins between the facsimile machine and the computer interface because Perkins' Device 3, including fax modem and processor, intervenes between the facsimile machine and the "computer interface," as claimed; the direct connection is between the facsimile machine and the Perkins' Device 3. There is no inconsistency and Oki Data's position, which ignores the actual claim language and the meaning of the data flow passage, collapses.

### 2. *Oki Data Has Abandoned Its Earlier Incorrect Diagram Despite the District Court's Adoption of that Mischaracterization*

In contrast to Infinity's consistent statements about the passive link's endpoints, Oki Data has changed the diagrams on which it relies, now abandoning

its fatally-flawed diagram that the district court incorporated into its opinion as purporting to represent Infinity's statements about Infinity's own invention:




Location of the passive link to the "computer" in distinguishing *Perkins*

Appx38. This diagram could not possibly show the Infinity embodiment under consideration in the data flow passage; there was no fax modem involved in communications between the facsimile machine and the computer, as claim 27 was purely digital communication. *See* Appx2188 ("digital data signals transferred through a passive link, without interception from the facsimile machine to the computer"). A fax modem converts analog signals to digital, or vice versa in the opposite direction. Apparently now recognizing its basic technical error, Oki Data simply drops the "computer's fax modem" from its new position. *See* BlueBr. at 23-24.[4]

But the district court erroneously relied on the now-abandoned diagram and, unassisted as it was by any supporting technical testimony, misunderstood Infinity's

[4] And, this diagram could not purport to show Infinity's characterization of the Perkins invention, because, as Oki Data acknowledges, Infinity argued there was no passive link in Perkins spanning the facsimile machine and computer. RedBr. at 39.

arguments. *See* Appx36 ("During prosecution of the '811 patent, the patentee maintained that a passive link must extend to a computer's I/O bus without any intervening devices.") Oki Data's belated modification emphasizes the error by the district court. In this *de novo* proceeding, Oki Data points to no evidence (nor can it) that Infinity said during prosecution the claimed passive link would extend through a computer's fax modem or to a computer's I/O bus.

Oki Data's abandonment of the original argument/diagram that it used to persuade the district court further demonstrates that *Teva Pharm. USA, Inc. v. Sandoz, Inc.* does not render the Infinity patents invalid. 789 F.3d 1335, 1345 (Fed. Cir. 2015). *Teva* requires irreconcilably contradictory statements about the meaning of a term in *one's own patent*, but Oki Data is now not even purporting to show that Infinity's statements about its ***own patented invention*** are contradictory. Rather, as revealed by its new diagram, Oki Data has shifted to something else entirely: the PTO's and Infinity's purported (though misunderstood) analysis of the components in Perkins. Oki Data is essentially recasting the Perkins invalidity analysis from 102/103 to 112—without reference to the then-present or current claim language,[5] subsequent prosecution history actually related to the Asserted Claims or the benefit of expert testimony. Oki Data's diagrams fail to describe how Infinity characterized

[5] As one example, the generic send/receive communications software limitation was added during reexamination and thus could not be considered by the PTO during pre-issuance prosecution. Appx1581-1584.

either Perkins or its own invention during prosecution, and thus fail to identify any inconsistency between prosecution and reexamination; these diagrams do not merit affirmance.

## II. NEITHER THE DISTRICT COURT NOR OKI DATA CONDUCTED THE NECESSARY ANALYSIS UNDER *NAUTILUS*

### A. The Intrinsic Record Supports Definiteness

The intrinsic record, including the language of the Asserted Claims and the entirety of the prosecution history, must be considered when evaluating whether the terms "computer" and "passive link" are definite. It is the claims that must be definite, not an isolated passage from the prosecution history devoid of context. 35 U.S.C. § 112.

> [A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

Unlike Infinity (BlueBr. at 28-45), neither the district court nor Oki Data performed a *Nautilus* analysis.[6] Pages 9 through 46 of Oki Data's brief are directed to the putative conflict in the prosecution history that its attorneys authored during litigation. It does not consider the actual language of the Asserted Claims at all.

---

[6] Oki Data refers in passing to *Nautilus*'s guidance that the prosecution history and specification must be considered, but omits reference to the claim language itself, which stands at the center of any analysis. RedBr. at 34; *cf. Nautilus*, 572 U.S. 908-910.

Nor does Oki Data follow the prime rule of *Nautilus*: "**First**, definiteness is to be evaluated from the perspective of someone skilled in the relevant art." *Nautilus*, 572 U.S. at 908 (emphasis added). Oki Data did not engage an expert to testify regarding that about which she or he was informed with reasonable certainty by the intrinsic record, and Infinity had no opportunity to depose any such expert, if one could have been located.

The Asserted Claims are straightforward and clear about the boundaries of the passive link, and do not suggest anywhere that the passive link must continue past the computer interface or port to the internal circuitry of the computer. "I/O bus" appears nowhere in the claims. *See, e.g.,* claim 1 of the '811 Patent (Appx95); claim 1 of the '574 Patent (Appx1687).

### B. Reference to Actual Claim Language, Required Under *Nautilus*, Mandates Reversal of the District Court

The plain language of claim 1 of the '574 Patent, which is actually asserted against Oki Data (unlike claim 27, which never issued and with respect to which the data flow passage relates), clearly delineates the passive link and the data flow or transfer through it:

> 1. A Method of using a facsimile machine to facilitate a transfer for digital image scan data or digital image print data between the facsimile machine and the computer, the method comprising:
>
> establishing a communication path between the facsimile machine and the computer using a bidirectional passive link; and

> activating the transfer in a first mode to send the digital image scan data from the facsimile machine directly to the computer, or activating the transfer in a second mode to receive digital image print data directly from the computer, the digital image scan data and the digital image print data being communicated over the bi-directional passive link, and the activating being initiated using generic send/receive communications software on the computer; and
>
> in the first mode, storing the digital scan data in a computer readable medium, for use as needed, and in the second mode, printing the digital image print data using a facsimile machine printer device.

Appx1687.[7]

Note that the first step of the claimed method (highlighted in blue) is directed to establishing the passive link, which is a "communication path." The second step refers to digital data transfer, or data flow. These two steps are distinct, as reflected by the plain and ordinary language of the claim. Similarly to the second element, the data flow passage begins with "when the applicant transfers digital data from the facsimile transceiver." Appx2201. The establishment of a passive link—the communications channel—has already occurred by that time; the data flow occurs "thereafter." Appx2201. Other claims corroborate that understanding. *See also* '574 Patent, claim 8 (Appx145); '423 Patent, claims 1, 2, 6 (Appx121); '915 Patent, claim

[7] Oki Data argues that because claim 1 of the '811 patent was identified as an example, all other claim language should be ignored. RedBr. at 3. The validity of each claim is determined independently, and Infinity is not constrained to argue about the language of one claim. 35 U.S.C. § 282. The language of claim 1 of the '574 Patent is helpful, for example, because it highlights the stark distinction between a communication path and data transfer.

1 (Appx167). In its brief, Oki Data is unwilling to acknowledge that difference or the impact the actual claim language has on its misinterpretation of the data flow passage. Thus, the district court was led to find erroneously that Infinity's claims were indefinite.

### C. The Data Flow Passage Cannot in Isolation Render the Terms "Computer" and "Passive Link" Indefinite

The data flow passage speaks to a benefit of pure ***digital*** communication: data flow can proceed unimpeded through the computer to the I/O bus and on to the CPU. But the district court did not even mention this Court's permissive benefits cases. *See e.g.*, *i4i Ltd.*, 598 F.3d at 844; *Thorner v. Sony Computer Entertainment America LLC*, 669 F.3d 1362 (2012). The data flow passage also states that the passive link ends at the port or interface of the computer. Appx2201. Neither the district court nor Oki Data makes any effort to reconcile the indefiniteness finding with this important distinction.

Again, the predicate on which district court's opinion and Oki Data's argument rely, the data flow passage, is set forth below:

> [W]hen the applicant transfers digital data from the facsimile transceiver through a passive link for scanning to the computer, ***the non-intercepted data*** enters through the RS 232 type connector ***port of the computer*** and passes directly to the I/O bus and is processed by the receiving circuits (i.e. UART, CPU), of the computer, providing a true non-intercepted digital signal between the facsimile transceiver and the computer.

Appx2201 (emphasis added). The district court cited the data flow passage as its example for the erroneous conclusion that "the Office Action Response [] repeatedly mentions the 'I/O Bus' as the endpoint of the link between the 'facsimile transceiver' and the 'computer.'" Appx24-25.

But the district court's statement and the data flow passage are at odds. The district court failed to differentiate between a benefit of the digital architecture of claim 27, namely that the digital data can continue without A/D conversion to the I/O bus and further to the CPU. This passage ***supports*** the notion that the claimed passive link is between the facsimile machine and the computer, stating explicitly that the "port" is part of the computer ("port *of the computer*"). Taken as a whole, the prosecution history speaks loudly and consistently: a computer is a standard or normal computer, beginning at its ports or interfaces, and the claimed "passive link" is between the "facsimile machine" and the "computer." *See* BlueBr. at 34-44.

## III. OKI DATA'S LATEST ATTEMPT TO JUSTIFY ITS MISINTERPRETATION ARE UNAVAILING

### A. Oki Data's Obviousness-type Argumentation Combining Perkins and Kenmochi is Inapposite

In a swirling miasma of Sections 102, 103 and 112, Oki Data raises in its Brief new arguments about invalidity in view of a combination of Kenmochi and Perkins. RedBr. at 40-41. These new arguments are improper, legally incorrect and do not support a finding of indefiniteness.

Oki Data contends that when addressing the Kenmochi reference during reexamination, Infinity asserted that the claimed passive link endpoint was the computer's RJ11 connector, after previously asserting the endpoint was the I/O bus. RedBr. at 37. As a threshold issue, Oki Data's argument begins (and ends) on the flawed foundation rebutted above: that Infinity allegedly stated during prosecution that the claimed passive link ended at the computer's I/O bus. *See* Section I, *supra*. This deficiency renders Oki Data's arguments about Infinity's later statements during reexamination irrelevant—as Oki Data has failed to identify any purported contradiction. Instead, the "new" position supports the former position: the claimed passive link starts at the facsimile machine and ends at the computer port or interface.[8]

Oki Data further mischaracterizes the record in asserting that Dr. Levitt adopted a new position in identifying the computer's RJ11 connector as the passive link's endpoint. RedBr. at 20. During prosecution, Infinity argued that the '811 Patent claims teach that the link between the facsimile machine and computer could be a cable between the devices' RJ11 connectors. Appx2143 ("The Applicant can use ***the existing telephone connector link***, an RJ11 … between the fax machine and

[8] Oki Data also raises the Nakamura reference distinguished during prosecution, which, like Perkins, taught an intervening device along the path from the facsimile machine to the computer interface, but Oki Data apparently does not ascribe any significance to this reference in its argument. RedBr. at 17-18.

the computer.") (emphasis added). Thus, when arguing during reexamination that Kenmochi was not prior art, Infinity and Dr. Levitt did not take a new or contradictory position regarding the endpoints of a passive link. Instead, they reiterated the position Infinity consistently took earlier during prosecution: the passive link ends at the computer's port.

### B. Oki Data's Attempt to Justify Its Misinterpretation that Perkins Is Otherwise Invalidating Was Not Decided or Considered by the District Court and Is Incorrect

Oki Data argues that Infinity had to state that the passive link began at the I/O bus to avoid invalidation by Perkins' internal embodiment, and that the district court agreed with this argument. RedBr. at 40. This argument is legally incorrect, ignores actual prosecution history and miscasts what Infinity actually stated.

As a threshold issue, none of elements of the Asserted Claims were considered by the district court or Oki Data. "A claim is anticipated only if each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference." *Verdegaal Bros. v. Union Oil Co. of California*, 814 F.2d 628, 631 (Fed. Cir. 1987). Neither the district court nor Oki Data ever considered the set of elements of the Asserted Claims or conducted any analysis about any Asserted Claim relative to Perkins.

In addition, Oki Data does not show that the district court adopted the position that Perkins renders any (much less all) of the Asserted Claims anticipated. At best,

as a secondary justification for its indefiniteness finding, the district court reasoned that Perkins was sufficiently close a reference that the erroneous understanding of the data flow passage must be correct. BlueBr. at 24. It was mistaken, and its comparison of 26 Asserted Claims to Perkins does not exist.

During prosecution, Infinity argued the Perkins reference did not anticipate on several grounds, including but not limited to: (a) Perkins lacked a passive link between the fax machine and the computer interface; and (b) contrary to claim 27, the Perkins invention only transferred analog signals between the PSTN transceiver on the Perkins card and the fax machine; and (c) Perkins used specialized software.

Oki Data ignores that Infinity explained to the Examiner: "Hence, even though circuitry of device 3 is placed in a card within the box containing the computer it should be regarded as a peripheral device." Appx2201. Thus, Infinity did not require the passive link extended to the I/O bus (nor did it rely on any such passive link) to avoid invalidation in light of Perkins.

As discussed in its Opening Brief, Infinity also distinguished Perkins on other grounds. *See e.g.*, BlueBr. at 52. Oki Data gives no consideration to other limitations in claim 27, "conditioning the facsimile machine to transmit digital signals representing data on a scanned document to the computer"—which Infinity argued Perkins could not meet. Appx2198. As Infinity argued, "At no time does Perkins state that the facsimile transceiver is equipped to receive or transmit digital

signals, or that the facsimile transceiver is configured with a connector suitable for the receipt or transfer of digital signals, such as an RS232 connector." Appx2198-2199. The PTAB itself recognized that Infinity made these arguments in distinguishing Perkins during prosecution and confirmed that they were factually correct: Perkins did not disclose sending digital signals between the facsimile machine and the Perkins card. Appx2692.

Oki Data further argues that during reexamination, Infinity purportedly admitted that it could not distinguish the Perkins reference on the basis of digital signal transmission. Appx2692. But Oki Data is incorrect, and its position is inconsistent with the PTAB's finding and Infinity's continued arguments before the PTAB. *See* RedBr. at 47; Appx3499-3501. Infinity's comment that the examiner did not find the analog versus digital signal arguments persuasive in distinguishing Perkins should be understood as an acknowledgement that claim 27 never issued, as part of the "ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation." *Phillips v. AWK Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005).

The digital and analog distinction has other implications on the claimed systems, however. Perkins required an intervening device because, in part, it was an analog transmission scheme and it required additional circuitry to convert the data to the digital format required for later processing, thus requiring interposed circuitry.

The ’811 Patent’s analog-permissive claims have additional limitations relative to claim 27, including for example leveraging an unmodified standard protocol (claim 12) or generic send/receive driver communications software (claim18). *See* Appx95.

The introduction of the passive link between the facsimile machine and computer emphasized the digital/analog distinction. This understanding is consistent with the PTAB’s findings in the reexamination appeal. *See, e.g.*, Appx2781; Appx2784; Appx2786-2787. It is also consistent with Infinity’s continued assertion of the analog versus digital distinction (vis-à-vis Perkins) in reexamination following the interview. *See e.g.,* Appx3499-3501.

As Infinity pointed out during prosecution, the Perkins card is more than a modem. It has its own microprocessor, requires specialized controlled software, and did not use a generic way of printing and scanning. Appx2143. These characteristics further distinguish Perkins.[9]

[9] Oki Data ignores that the Infinity analog permissive claims (Claims 6, 12, and 18) are distinguishable from Perkins at least in light of these factors, in addition to Perkins’ failure to disclose a passive link spanning the facsimile machine and the computer.

## IV. *TEVA* DOES NOT SUPPORT INDEFINITENESS OF THE ASSERTED CLAIMS IN LIGHT OF THE CLAIM LANGUAGE, SPECIFICATION, AND EXPERT TESTIMONY

Oki Data continues to argue that *Teva* requires invalidation despite guidance from the claim language, specification and expert testimony—all factors supporting definiteness under *Nautilus* / *Phillips*.

Oki Data is incorrect. As set forth above, it fails to address the explicit claim language discussing the passive link coupling the facsimile machine and the computer, and the clear differentiation of that physical link from transmitted data. *See e.g.*, ’811 Patent, claim 1 (Appx95); ’423 Patent, claims 1 & 2 (Appx121); ’574 Patent, claim 1 (Appx145); ’915 Patent, claim 1 (Appx167).

Oki Data further completely fails to address Infinity’s citation to guidance contained in the ’811 Patent’s specification that shows that the “computer” starts and the passive link ends at the computer’s RS232 ports. BlueBr. at 48-49.

Oki Data never establishes that there are multiple industry standard definitions of “computer” or “passive link,” or that any construction of passive link would be understood by a person of skill in the art as extending through the computer to the I/O bus. Oki Data argues “[t]he term ‘passive link’ is not a term of art and has no recognized plain and ordinary meaning,” but this assertion is unsupported attorney argument RedBr. at 35. Plaintiff’s expert Dr. Levitt’s uncontradicted expert

testimony is that "passive link" is "***well understood by those skilled in the art*** as a connection which is not active." Appx2975-2976. A common example is a cable.

Oki Data cites other cases seeking to bolster its incorrect reading of *Teva*, but none of them require a different result. In *Dow Chem. Co. v. Nova Chemicals Corp. (Canada)*, there were three formulas used to calculate the maximum slope at issue, but no guidance from the claim language, specification, or prosecution history as to which formula to use. 803 F.3d 620, 633-34 (Fed. Cir. 2015). Compounding this confusion, the patent owner's expert developed a fourth method for this calculation for purposes of the litigation. *Id.* Neither circumstance is present here, and in *Dow*, no purported contradictions were even identified. Likewise, *Springs Window Fashions LP v. Novo Indus., L.P.*, addresses prosecution history disclaimer—which, as described in Section V, *infra*, does not limit Infinity's claims. 323 F.3d 989, 995 (Fed. Cir. 2003).

Oki Data further argues that Infinity cannot rely on Dr. Levitt's testimony to support definiteness and distinguish *Teva* because it purportedly created the conflicting statements in the first place, thus contradicting the intrinsic record, and because it is conclusory. RedBr. at 54-57. Dr. Levitt's testimony during prosecution and this litigation is consistent with Infinity's position that *the claimed* passive link ends/claimed computer begins at the computer's ports. *See* Section I, *supra*.

The district court wrongly accorded Dr. Levitt's testimony no weight. Oki Data's assertion that Dr. Levitt provided no plain and ordinary meaning for the term passive link is contradicted by the very section of his testimony that Oki Data cites. He explained that a passive link is "a connection which is not active." Appx2975. And he further cited his testimony during reexamination on the very same issue providing additional construction should the Court deem it necessary. Appx2975. As Oki Data's cited case law is inapposite, it cannot support the district court's failure to accord weight to Dr. Levitt's testimony. In *SkinMedica, Inc. v. Histogen Inc.*, the expert's one-word deposition answers contradicted the patent's specification. 727 F.3d 1187, 1210 (Fed. Cir. 2013). Here, by contrast, Dr. Levitt's description of the passive link as an RJ11 cable is entirely consistent with the specification, which identifies numerous such cables, and discusses data entering the computer at its ports. *See* BlueBr. at 30; 36; 48-49. In *In re Walter*, the patentee did not rely on its own expert's declaration before the Board—a circumstance clearly absent here as Infinity has relied on Dr. Levitt's testimony during reexamination, at the district court, and before this Court. 698 Fed. App'x 1022, 1027 (Fed. Cir. 2017). Further, contrary to Oki Data's characterizations, Dr. Levitt's opinions are not conclusory; his reasons are set out in his respective declaration, which Oki Data ignores. *See e.g.*, Appx2975 at ¶¶58-60.

Oki Data has failed to provide any contravening evidence to Dr. Levitt's testimony to allow it to distinguish *Eli Lilly & Co. v. Teva Parenteral Meds., Inc.*, 845 F.3d 1357, 1371 (Fed. Cir. 2017) and *Tinnus Enters., LLC v. Telebrands Corp.*, 733 F. App'x 1011, 1021 (Fed. Cir. 2018), where this Court found expert testimony supported definiteness. And Oki Data "points to no evidence showing that skilled artisans would find the element [at issue] lacking reasonable certainty in its scope." *Apple Inc. v. Samsung Elecs. Co.,* 786 F.3d 983, 1002–03 (Fed. Cir. 2015), *rev'd and remanded on other grounds*, *Apple Inc. v. Samsung Elecs. Co.*137 S. Ct. 429, 196 L. Ed. 2d 363 (2016). These cases actually support reversal here. BlueBr. at 45; 49.

Oki seeks to further distinguish *Tinnus* by pointing to the examiner's introduction of the purportedly indefinite term. RedBr. at 58. But Oki Data ignores that the Federal Circuit relied in *Tinnus* on context of the surrounding claim language, expert testimony, and the specification. *Tinnus*, 733 F. App'x at 1019-1020. Oki Data ignores each of these factors, instead myopically focusing on a purported contradiction in the prosecution history to manufacture indefiniteness where there is none.

And so, Oki Data fails to show that *Teva* mandates indefiniteness here. This Court should reverse the district court on these grounds.

## V. INFINITY DID NOT DISAVOW CLAIM SCOPE DURING PROSECUTION

Oki Data's position about disavowal fails at the threshold because Infinity never said that a passive link or cable is attached to the I/O bus at any point during the prosecution. Infinity always said that the computer starts at the port or interface. *See* Section I, *supra*.

Even if its comments could be characterized as unclear based on the misinterpretation offered by Oki Data's lawyers (and no experts) in the case, that is not enough to find disclaimer. *Schwing GmbH v. Putzmeister Aktiengesellschaft*, 305 F.3d 1318, 1324–25 (Fed. Cir. 2002).

Oki Data's cited precedent is inapposite. Unlike in *Poly-America, L.P. v. API Industries, Inc.*, 839 F.3d 1131, 1136-37 (Fed. Cir. 2016), where the statements in the prosecution history and disparagement in the specification together supported a "clear and unmistakable disavowal," in this case the statement in the prosecution history should be read as consistent with Infinity's proposed endpoint for the passive link, and there is no support in the specification for Oki Data's position. Likewise, in *Openwave Sys., Inc. v. Apple Inc.*, 808 F.3d 509, 513-514 (Fed. Cir. 2015), the Court relied on repeated disparagement in the specification to support disavowal; but here Oki Data can point to no such statements in the specification or prosecution history. This Court's recent precedent reflects that unless "the patentee has [] 'made clear' that the [alleged element] is 'an essential part of the claimed invention,' there

is no disclaimer. *See Continental Circuits LLC v. Intel Corporation*, 915 F.3d 788, 799 (Fed. Cir. 2019). Infinity made no such representation about a passive link extending to an I/O bus.

The district court made no determination of disavowal. It should not have; a person of ordinary skill in the art, such as Dr. Levitt and Dr. Melen, would have considered the plain and ordinary meaning of the claims and the prosecution history as a whole in finding the terms definite. BlueBr. at 30; *see also* Appx2957; Appx2975-2979; Appx3631-3632; Appx3635-3641. Both experts of record concluded that the terms "computer" and "passive link" are definite, the latter in accordance with the explicit definition applied by a unanimous panel of the PTAB during re-examination initiated by codefendants of Oki Data.

## CONCLUSION

For all the foregoing reasons, the Court should (1) reverse the district court's erroneous determination of indefiniteness of "passive link" and "computer"; (2) adopt the parties' otherwise agreed construction of "passive link"; (3) rule that "computer" is a simple term that should be afforded its plain and ordinary meaning and requires no construction; and (3) vacate the Final Judgment, which is based on the underlying ruling of indefiniteness.

Respectfully submitted

/s/ Andrew G. DiNovo
ANDREW G. DINOVO
NICOLE E. GLAUSER
DINOVO PRICE LLP
7000 N. MoPac Expressway, Suite 350
Austin, Texas 78731
Telephone: (512) 539-2626
Facsimile: (512) 539-2627

*Counsel for Plaintiff-Appellant*
*Infinity Computer Products, Inc.*

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

**CERTIFICATE OF COMPLIANCE**
**WITH TYPE-VOLUME LIMITATIONS**

**Case Number:** 20-1189

**Short Case Caption:** Infinity Computer Products v. Oki Data Americas, Inc.

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

__X__ the filing has been prepared using a proportionally-spaced typeface and includes 6,048 words.

_____ the filing has been prepared using a monospaced typeface and includes lines of text.

_____ the filing contains __ pages / ___ words / ___ lines of text, which does not exceed the maximum authorized by this court's order (ECF No.____ ________________________).

Dated: August 10, 2020

DiNovo Price LLP
7000 N. MoPac Expressway,Suite 350
Austin, Texas 78731
Tel: 512.539.2626
Fax: 512.539.2627

By: */s/ Andrew G. DiNovo*
Andrew G. DiNovo
Attorneys for Plaintiff-Appellant